UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

TINA MCPHERSON,

      Plaintiff,

 -vs-

ALLEY FINANCIAL, LLC,
SUBURBAN ANN ARBOR, LLC,
T&H TOWING AND RECOVERY,
LLC,
MATTHEW JAMES FERNEY,

      Defendants.

Case No. 4:20-CV-13152-SDD-DRG
Hon. Stephanie Dawkins Davis
Magistrate Judge: David R. Grand

## PLAINTIFF'S RESPONSE TO SUBURBAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons set forth in this response, Ms. McPherson's response Suburban's statement of material facts, the exhibits, and the accompanying brief in support, Ms. McPherson requests that the Court deny the motion for partial summary judgment and order the matter tried on the merits.

Respectfully Submitted,


By:   /s/ *Ian B. Lyngklip*
Ian B. Lyngklip P47173
**LYNGKLIP & ASSOCIATES,**
**CONSUMER LAW CENTER, PLC**
Attorney for Tina McPherson
13751 W. 11 Mile Road
Oak Park, MI   48237
(248) 208-8864
Ian@ConsumerLawyers.Com

Dated: April 1, 2022

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

TINA MCPHERSON,

     Plaintiff,

  -vs-

ALLEY FINANCIAL, LLC,
SUBURBAN ANN ARBOR, LLC,
T&H TOWING AND RECOVERY,
LLC,
MATTHEW JAMES FERNEY,

     Defendants.

Case No. 4:20-CV-13152-SDD-DRG
Hon. Stephanie Dawkins Davis
Magistrate Judge: David R. Grand

## BRIEF IN SUPPORT OF
## PLAINTIFF'S RESPONSE TO SUBURBAN'S MOTION FOR
## PARTIAL SUMMARY JUDGEMENT

### PRINCIPLE AUTHORITIES

**FEDERAL STATUTES**
Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*.
Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.
Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*

**FEDERAL REGULATIONS**
Reg. B 12 CFR 1002.1 *et seq*.
Reg. Z, 12 CFR 1026.1 *et seq*.

**FEDERAL CASES**
*Adams v Plaza Finance Company,* 168 F.3d 932 (7th Cir. 1999)
*Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950 (E.D. Mich. 2017)
*Branch Banking & Tr. Co. v. Pac. Life Ins. Co.*, 645 F. App'x 387 (6th Cir. 2016)
*Drewry v. Starr Motors, Inc*., Case No. 3:07CV624 (E.D. Va. May 12, 2008).
*Ford Motor Credit Co. v. Cenance*, 452 U.S. 155 (1981)

*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980).
*Garl v. Genesee Valley Auto Mall*, No. 16-13712, 2018 WL 994318; 2018 U.S. Dist. LEXIS 27875 (E.D. Mich. Feb. 21, 2018)
*Godby v. Wells Fargo Bank,* 599 F. Supp. 2d 934 (S.D. Ohio 2008).
*Hirsch v. Ga. Iron & Coal Co*., 169 F. 578 (6th Cir. 1909)
*Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118 (11th Cir. 2006)
*Patton v. Jeff Wyler Eastgate, Inc.*, 608 F Supp.2d 907, 914 (S.D.Ohio 2007)
*Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384 (3rd Cir. 2002)
*Salvagne v. Fairfield Ford, Inc.*, 794 F.Supp.2d 826 (S.D.Ohio 2010)
*Smith v. One Nev. Credit Union*, Case No.: 2:16-cv-02156-GMN-NJK (D. Nev. June 27, 2017)
*Smith v. Bob Smith Chevrolet, Inc*., Case No. 3:02-CV-258-H (W.D. Ky. July 29, 2003)
*Smith v. Lexisnexis Risk Solutions, Inc*., No. 12 CV 8872 (N.D. Ill. Mar. 5, 2014)
*Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004)*.*
*Tyson v. Sterling Rental, Inc*., 836 F.3d 571 (6th Cir. 2016)

**MICHIGAN STATUTES**
Credit Reform Act, M.C.L. § 445.1851 *et seq*.
Motor Vehicle Code, M.C.L. § 257.37
Motor Vehicle Sales Finance Act, M.C.L. § 492.101 *et seq*.
Refund of Down Payment on Vendor's Rescission of Sale Act ("RDCPA"), M.C.L. § 445.141
Regulation of Collection Practices Act, M.C.L. § 445.251 *et seq*.
Revise Judicature Act, M.C.L. § 600.2919a.
Uniform Commercial Code Article 2, M.C.L. § 440.2610
Uniform Commercial Code Article 9, 440.9101 *et seq*.

**MICHIGAN CASES**
*Twichel v MIC Gen Ins Corp*, 469 Mich. 524(2004)

**OTHER AUTHORITY**
*Bulletin 2013-08-CF*
*Murray Brown Letter 1989*
*Coffey, FTC Informal Staff Opinion Letter (02-22-98)*
*Consumer Information 4-11-00*

## INTRODUCTION

This case arises from Suburban Ann Arbor, LLC' sale and subsequent theft of a Dodge Durango from its intended buyer, Tina McPherson.

After selling the vehicle to Ms. McPherson under a retail installment sales contract, Suburban attempted to assign its interest in the monthly payments to one of its affiliated finance companies, Ally Financial.  Because Suburban had itself completed the sale to Ms. McPherson before receiving any approval, Ally Financial rejected the assignment, leaving Suburban to accept monthly payments under the contract with Ms. McPherson.

Even though failure of the assignment arose directly from Suburban's own conduct, it refused to honor its agreement with Ms. McPherson.   Instead, it rejected her payments and stole the car over Ms. McPherson's objections from her driveway while her daughter looked on.

Contrary to the claims in Suburban's motion, Michigan law prohibits car dealers from treating their financing contracts as conditioned on assignment, and the law requires them to honor their contracts by accepting payments if they cannot find finance companies willing to accept payments.

## Issues Presented by Motion

Suburban offers up a series of legal conclusions claiming that Ms. McPherson's case must fail in its entirety.   This case is best understood as being driven by *three core questions* which lie at the heart of each of the legal arguments below.

1. *Did Suburban intend to be bound by its disclosures in the event that it could not assign Ms. McPherson's contract to a willing finance company?*

   Plaintiff says **NO**. Suburban's managers have testified that Suburban does not believe its contracts are "complete" or "binding" until it secures assignment of the contract, even after the sale is completed for purposes of Michigan law.   In this case, Suburban followed its established practice and treated Ms. McPherson's sale as conditioned on assigning the RISC.   It repossessed her Durango when it was unable to do so.

2. *Did Suburban actually complete a binding sale to Ms. McPherson?*

   Plaintiff says **YES.**   Under Michigan law, the sale was complete for all purposes upon execution of a contract, completion of the title, receipt of Ms. McPherson's down payment, and delivery of the vehicle.

3. *Did Suburban have the right to demand that Ms. McPherson sign a new contact, and then deem Ms. McPherson's refusal to sign the new contract as her breach?*

   Plaintiff says **NO.**   Neither the common law, UCC, nor Michigan public policy allows a dealer to require a consumer to agree to a new contract.   The demand for a new agreement constituted Suburban's own repudiation and violation of Michigan law. Ms. McPherson had no duty to sign a new agreement.

Suburban assumes a favorable answer to each of these questions but provides no analysis.    Plaintiff answers each as follows.

1.    **Suburban never intended to be bound by its agreement and knew that the assignment was likely to fail, even before it sold the Dodge Durango to Ms. McPherson.**

Even though Suburban executed all the customary paperwork, accepted consideration from Ms. McPherson ($2,000), conveyed titled, recorded the transaction, and delivered the vehicle, Suburban still takes the position that the transaction was not complete or enforceable by Ms. McPherson.    This position is not novel to the industry (*Bulletin 2013-08-CF*, Exhibit 17; *Murray Brown Letter 1989*, Exhibit 16), nor is it uncommon at Suburban's own dealership (SOUMF at ¶1-12).

Suburban's actions and statements are consistent with the testimony of its managers in this regard.   Because Suburban does not consider these transactions as completed, it views all of its disclosures and contracts as conditional and subject to securing an agreement from a finance company to accept assignment of the deal. (SOUMF at ¶1-12.)   In the absence of such an assignment, it assumed that it could repossess Ms. McPherson's Durango. And it never intended its disclosures or the RISC to be enforceable by Ms. McPherson.   (SOUMF at ¶1-12.)

2.   __Suburban agreed to a binding, complete auto sale under Michigan Law.__

Notwithstanding Suburban's intent to not be bound by its disclosures or contract, the State of Michigan has repeatedly recognized the illegality of treating completed consumer contracts as "conditional" (*Murray Brown Letter 1989*, Exhibit 3; *Secretary of State 2018 Dealer Manual* at § 3-3.4 page 5, Exhibit 4; *Consumer Information 4-11-00*, Exhibit 5; *Bulletin 2013-08-CF*, Exhibit 3.) More importantly, Michigan law stated the necessary elements to establish ownership of a vehicle. "Owner" means,

> (a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.
>
> (b) Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.
>
> (c) A person who has the immediate right of possession of a vehicle under an installment sale contract.

M.C.L. § 257.37.   See also, *Twichel v. MIC General Insurance*, 469 Mich. 524, 530 (Mich. 2004); M.C.L. § 440.2201(a); M.C.L. § 440.2204.

In this case, there is no dispute Ms. McPherson satisfied each of the possible definitions.   (*Certificate of Title*, Exhibit 27; *Certified Title History*, Exhibit 41; *RISC*, Exhibit 24).   As a matter of law, Ms. McPherson purchased the vehicle in a valid, binding transaction that was complete.

3.    **Ms. McPherson was not required to sign a new contract and did not default.**

Suburban claims that Ms. McPherson was required sign an entirely new agreement which waived her right to sue and bring this very case.   As a corollary, Suburban concludes that her refusal constituted a breach of the contract.   In support, Suburban offers no contract provision requiring this of Ms. McPherson. Nor does it offer a single citation of authority of any kind in support.

But Suburban may not reframe its own repudiation (M.C.L. § 440.2610) as a breach by Ms. McPherson.   Suburban advanced these same arguments in its affirmative defenses but withdrew them [R. 86.]   Were this not so, this defense would still contradict basic principles of contract law and mitigation. Suburban cites no law for its position, and case law from this circuit holds that a party is under no obligation to sign a new contract with a breaching party.   *Branch Banking & Tr. Co. v. Pac. Life Ins. Co.*, 645 F. App'x 387, 392 (6th Cir. 2016) ("When a party breaches a contract by unilaterally changing the terms, that is akin to making a new contract and an injured party's "duty to minimize the damages d[oes] not require him to go so far as to make a new contract with" the breaching party."); *Hirsch v. Ga. Iron & Coal Co.*, 169 F. 578, 581 (6th Cir. 1909) (mitigation of damages "has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrongdoer from the legal consequences of his own error.").

Likewise, this same conduct is specifically contrary to public policy. M.C.L. § 492.101 *et seq.;* (*Murray Brown Letter 1989*, Exhibit 16; *Secretary of State 2018 Dealer Manual* at § 3-3.4 page 5, Exhibit 18; *Consumer Information 4-11-00*, Exhibit 19; *Bulletin 2013-08-CF*, Exhibit 17). As a matter of law, Ms. McPherson had no duty to execute a new contract as an accommodation to Suburban which had already repudiated the prior agreement. M.C.L. § 440.2610; *BB&T, supra; Hirsch, supra.*

### PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH HER CLAIMS

1. **Suburban violated the TILA.**

   a. **Suburban's disclosures falsely included the cost of GAP Insurance in the "Amount Financed" by Ms. McPherson.**

   The Truth in Lending Act ("TILA") requires that creditors like suburban disclose the cost of guaranteed auto protection, known as "GAP" insurance, as a "finance charge" unless the dealer complies with certain requirements. The creditor may avoid this rule and shift the cost of the insurance into the *Amount Financed*, but only if the consumer requests the coverage and the coverage is not required. 12 CFR 1026.4(d)(1) and (3). In this case, Suburban told Ms. McPherson that the GAP insurance was required, but then had her sign an agreement which stated that she was voluntarily buying the insurance.

The Court should examine the substance rather than the form of the transaction. *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158 (1981); *Clark v. Rent-It Corp.*, 685 F.2d 245, 248 (8th Cir. 1982). *See also Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 753 (7th Cir. 2000). The "substance" of the credit transaction refers to the underlying truth of the transaction.  When reviewing a claim of an undisclosed *Finance* Charge, the Court may review the disclosures as they should have been prepared, had all charges been properly disclosed. *Adams v Plaza Finance Company,* 168 F.3d 932, 936 (7th Cir. 1999).

Where the creditor has secured signatures and an acknowledgement of compliance with the TILA, that documentation is not dispositive. Federal Reserve Board Staff Letter of December 20, 1997, No. 1270, Consumer Credit Guide (CCH) ¶ 31, 756. Courts agree.  See *Garl v. Genesee Valley Auto Mall*, No. 16-13712, 2018 WL 994318, at *3 (E.D. Mich. Feb. 21, 2018) (Cox, J); *Beltran v. USA Auto Inc.*, No. CV-14-02247-PHX-GMS, 2015 WL 12672084, at *2 (D. Ariz. Feb. 23, 2015) (citing cases); *Robinson v. Carport Sales & Leasing, Inc.*, No. 6:14-CV-1358-ORL-TBS, 2015 WL 224655, at *3 (M.D. Fla. Jan. 15, 2015) (GAP insurance could be compulsory despite contract stating GAP was voluntary); *Hager v. Am. Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 784 (S.D.W. Va. 1999) (credit life insurance could be required despite language to the contrary in contract).

In this case, there is no genuine issue of material fact that Suburban required Ms. McPherson to take out a GAP policy as a condition of credit.   Consequently, the $375 charges for that policy should have been disclosed as a "finance charge" rather than including the amount in the "amount financed."

| Item | Amount Disclosed | Actual Amount | Difference |
|---|---|---|---|
| Finance Charge | $17,263.71 | $17,638.71 | + $375 |
| Amount Financed | $26,915.04 | $26,540.04 | -   $375 |
| APR | 17.00% | 17.814% | .814% |

See *RISC*, Exhibit 24, and *TILA Calculations from RISC*, Exhibits 5; and *TILA Re-Calculations*, Exhibits 6.   Ms. McPherson's testimony stands unopposed and asserts that Ms. Garner ***required*** this coverage as a condition of financing.   For these reasons, the Court should deny suburban's motion as to the TILA claim.

### b.   Suburban failed to disclose the demand feature.

The TILA also requires disclosure by creditors of any demand feature.   12 CFR 1026.18(i).   The State of Michigan has made clear that spot deliveries operate as demand features, accelerating payment upon the insecurity of the dealer. See *Bulletin 2013-08-CF*, Exhibit 17 ("Failure to locate financing or an assignee on the part of the seller generates insecurity in the seller which induces the seller to void or

accelerate the contract."). For Suburban this was neither unanticipated nor unexpected (SOUMF at ¶1-12), but Ms. McPherson had no reason to expect that Suburban break the law and take her Durango. See *Tyson; Bulletin 2013-08-CF*, Exhibit 17.

Suburban has operated this way in the past and continues to do so even after the filing of this suit. (SOUMF at ¶1-12) At the time it sold the Durango, Suburban knew it had no approval from Ally (SMOUF at 46). More importantly, it knew that in order to expect that Ally would accept assignment, it should only submit the deal if Ally approved the assignment ***in writing***. Because it had no such written approval, it had no basis to expect that Ally would expect assignment. Suburban never disclosed this to Ms. McPherson, let alone in the space or form required by the TILA. 12 CFR 1026.18(i).

Suburban failed to disclose any demand feature or the conditions which would trigger Suburban's ability to recall the loan and take her vehicle. Suburban hid this material fact, even though it had an established policy of demanding return of cars where the finance company had refused assignment and knew it would treat Ms. McPherson the same. In the absence of this disclosure, Ms. McPherson had no way to protect herself against this eventuality or shop to other dealers who would not do so. This demand feature should have been disclosed and Suburban failed to do so

as required under the TILA.    The Court should deny the motion by Suburban as to

the TILA claim.

### c.    Suburban's intended conduct rendered the TILA disclosures misleading, unmeaningful, and illusory.

The TILA requires "meaningful" disclosures.    15 U.S.C. § 1601(a); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980).    TILA requires creditors like Suburban to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."    *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).    This accuracy requirement excludes not only literal falsities, but also misleading statements. *Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 290-291 (3rd Cir. 2002) See also, *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir.1977) (recognizing violation based on misleading disclosure); see also *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692 (7th Cir.1998); *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir.1980) ("A misleading disclosure is as much a violation of TILA as a failure to disclose at all.").    See also, *Rucker v. Sheehy Alexandria, Inc.*, 228 F. Supp. 2d 711 (E.D. Va. 2002).

When a creditor withholds material disclosures like the conditional nature of the transaction, it undermines the value and clarity of those disclosure, rendering

them "illusory" and not "meaningful" as required by the TILA. See *Salvagne v. Fairfield Ford, Inc.*, 794 F.Supp.2d 826, 834-836 (S.D.Ohio 2010). See also, *Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F.Supp.2d 1343 (SD. FL 2007); *Patton v. Jeff Wyler Eastgate, Inc.*, 608 F Supp.2d 907, 914 (S.D.Ohio 2007). Likewise, the conditional nature of a "spot delivery" renders calculations concerning the finance charges inaccurate. *Rucker v. Sheehy Alexandria, Inc.*, 228 F. Supp. 2d 711 (E.D. Va. 2002).

In this case, Suburban's disclosures reflected an unconditional approval, but Suburban believed its contract ***was*** conditional, and that the conditional nature of this contract allowed it to demand that Ms. McPherson execute the new agreement (DMFSJ at PageID 877-878). Suburban believed at the time that the RISC was not binding, and it had no intention of being bound if it could not assign Ms. McPherson's RISC. The refusal to disclose the conditions of the contract rendered the TILA disclosures illusory and not meaningful. Thus, for the same reasons set forth in *Patton*, the Court should find that effect of that document, the terms in these two documents fundamentally contradict one another.

2.    **Suburban is a "creditor" for purposes of the ECOA and violated that statute.**

Suburban does not dispute that creditor must provide written notice of adverse or that it took adverse action when if repossessed Ms. McPherson's vehicle.   Rather, argues that it is not a creditor for purposes of the ECOA, and therefore seeks to relitigate the underlying holding of *Tyson*.   Namely, Suburban argues that car dealers are *mere middlemen* and not subject to the ECOA as a "creditor" absent and allegation of discrimination.   (DMISJ, at PageID.882).

The Sixth Circuit held that car dealers, and any creditor who sets the terms of credit attempts to change the terms of credit, are each a "creditor" for purposes of the ECOA.   *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 579 (6th Cir. 2016) ("there is no question that Car Source fits that bill because Car Source, not CAC, makes the credit decisions and its ultimatum 'change[d] ... the terms of [Plaintiff's] existing credit arrangement.'")   Were this not so, there would still remain no genuine issue of material fact, that Suburban is a creditor for purposes of the ECOA.   (SOUMAF at 13-32) As set forth in the accompanying SUMF, Suburban engages in each aspect of the credit process, and is therefore a "creditor" for all purposes under the ECOA. For these reasons, the Court should find that Suburban is a creditor, and deny the motion as to the ECOA claims.

3.    **Suburban illegally accessed and used Ms. McPherson's consumer reports after making its credit decision in violation of the FCRA.**

The permissible purpose to use a consumer's credit report under the FCRA does not provide unending authority for the user.   Rather, the access is limited to the certified purpose and terminates when that consumer-initiated purpose has been completed.   See *FTC Staff Advisory Opinion to Benner (04-30-99)*;   *Advisory Opinion to Long (07-06-00)*.   Likewise, if the consumer's transaction is complete, the user may not access to the report to initiate a new transaction not authorized by the consumer. See *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118 (11th Cir. 2006) (marketing new credit).

Within the context of an automobile transaction, a car dealer may access a consumer report only when they have received a written credit application *Coffey, FTC Informal Staff Opinion Letter (02-22-98)*.   Courts have adopted the FTC's same analysis.   *Smith v. One Nev. Credit Union*, Case No.: 2:16-cv-02156-GMN-NJK, at *6 (D. Nev. June 27, 2017) ("The idea that a single authorization to obtain credit reporting information for a once existing account would authorize an institution to continue to obtain such information pertaining to a terminated account into perpetuity strains credulity.")

Once a car dealer has completed its credit decision or transaction with the consumer, there remains no "transaction initiated" by the consumer, and thus no permissible purpose exists for the use of the consumers report. See *Drewry v. Starr Motors, Inc*., Case No. 3:07CV624, at *11 (E.D. Va. May 12, 2008). See also, *Smith v. Bob Smith* Chevrolet, Inc., Case No. 3:02-CV-258-H, at *1 (W.D. Ky. July 29, 2003). *Smith v. Lexisnexis Risk Solutions, Inc*., No. 12 CV 8872, at *7 (N.D. Ill. Mar. 5, 2014) (denying dismissal based on allegations of multiple accesses with pending transaction). Similarly, where a consumer formerly maintained an account but later filed bankruptcy, the permissible purpose for use ceases to exist*. Kerr v. Nat'l Funding, Inc.,* No. 1:20-CV-02504, at *6 (N.D. Ohio Mar. 29, 2021) *Duraj v. PNC Bank*, 2017 WL 5508380, at *3 (N.D. Ohio Nov. 15, 2017); *Smith v. One Nev. Credit Union*, 2017 WL 2803169 (D. Nev. June 27, 2017); *Ruk v. Crown Asset Mgmt., L.L.C.*, 2017 WL 3085686 (N.D. Ga. June 8, 2017); *Godby v. Wells Fargo Bank,* 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008). Once the purpose of an inquiry has been satisfied – as by approving credit and completing the credit transaction – any further access or use falling outside that purpose is unauthorized and a violation of the FCRA.

In this case, Suburban's credit decision was complete, as was the sale to Ms. McPherson, on July 9, 2020. *Twichel v MIC Gen Ins Corp*, 469 Mich. 524, 533

(2004);  Official  Interpretations  of  Reg.  B,  12  C.F.R.  pt.  1002,  supp.  I,  §

1002.9(a)(1)-2.   Ms. Garner accessed the report for use in a transaction that Ms.

McPherson  had  not  initiated  and  had  no  other  permissible  purpose.   Suburban's

actions in accessing Ms. McPherson's credit report fell beyond the limited, single

use  allowed  by  the  FCRA.   For  this  reason,  the  Court  should  deny  Suburban's

motion as to Ms. McPherson's claims under the FCRA.

**4.**   **A genuine issue exists whether Suburban imposed an unauthorized
        charge that violated the MVSFA.**

The Motor Vehicle Sales Finance Act (MVSFA) uses TILA as the reference

point for calculating finance charges under its own rubric. M.C.L. § 492.118(3);

M.C.L.  §  492.122a.   The  MVSFA  bars  illegal  charges  (M.C.L.  §  492.131(a))  and

prohibits charges for deals that are not completed (M.C.L. § 492.131(b)).   See also.

Refund of Down Payment on Vendor's Rescission of Sale Act ("RDCPA"), M.C.L.

§  445.141.);  and  provides  a  remedy  for  those  unauthorized  and  unwritten  charges

(M.C.L. § 492.131(d)).

As set forth above, Suburban required GAP insurance from Ms. McPherson,

rendering the fee for that insurance to be a finance charge which was improperly

disclosed  as  an  "amount  financed."   As  such,  the  improper  statement  of  the  that

amount also violated the MVSFA.   Additionally, Suburban imposed unauthorized

charges when it illegally retained her entire down payment of $2,000.   There was no contractual or statutory basis for retaining these funds, and Suburban offered no legal reason for doing so when Ms. McPherson requested the return of her money. Suburban itself – as it does in all cases where finance companies reject assignment -- viewed the McPherson transaction as incomplete. (SOUMF at 1-12.)   Suburban did not then, nor has it now, provided a proper basis for retaining Ms. McPherson's down payment or charge her for a repossession which should never have occurred. Suburban required Ms. McPherson to buy GAP insurance and kept Ms. McPherson's $2,000 down payment.   The MVSFA plainly requires that disclosures conform to the TILA in calculation of finance charges.   Ms. McPherson's testimony on this point amply supports her claim as to an improper charge under the MVSFA, and the Court should deny the motion.

5.   **A genuine issue of material fact exists that Suburban has imposed an excessive fee upon Ms. McPherson for purposes of the Credit Reform Act.**

The MCRA defines an "excessive fee" as any charge that violates any provision of Michigan law.   M.C.L. § 445.1852(f).   The statute goes on to prohibit a regulated party from charging any party for an excessive fee (M.C.L. § 445.1856(4)) and provides a remedy to aggrieved consumers who have been subject to these fees.   (M.C.L. § 445.1856(4).)

In this case, imposed illegal charges was for re-tilting, re-keying, and

repossessing the vehicle in the absence of any breach or default by Ms. McPhereson. In absence of any cognizable breach by Ms. McPherson, Michigan law required that Suburban return the full amount of Ms. McPherson's down payment. Suburban's retention of that $2,000 operates as an "excessive," unlawful and undisclosed fee against Ms. McPherson, which Michigan law bars, even if disclosed and agreed to. Accordingly, the Court should deny the motion as to this claim and permit Ms. McPherson to proceed to trial.

**6.** **Suburban is subject to the requirements of the MRCPA.**

Suburban claims it did not engage in a covered activity under the MRCPA because it never asked for additional money from Ms. McPherson.   (DMFSJ at Page ID 889.)

First, Mr. Boles concedes that Suburban effectively accelerated the balance due for the car and sought the full amount of the note from Ms. McPherson. (*Bulletin 2013-08-CF*, Exhibit 17) Second, the definition section of the MRCPA regulates the act of "repossession" as regulated activity.   M.C.L. § 445.251(2) Thus, Suburban's own argument establishes that Suburban repossessed Ms. McPherson's vehicle, and it did so in spite of her repeated attempts to pay for the vehicle under the terms of the contract.   Third, throughout its efforts to obtain the car, title and keys, Suburban made numerous misstatements concerning its rights to demand that Ms. McPherson

sign a new contract and its ability to repossess the Dodge Durango. Each of these misstatements was made in an effort to regain possession of the vehicle, full payment, or a new contract. As such, these statutes are covered by the MRCPA, and the Court should deny Suburban's motion as to this count.

7. **Ms. McPherson has stated a claim for violation of Article 9 of the MUCC**

The claims under Article 9 are presented in the alternative, in the event that the Court finds the Suburban was "secured party" within the meaning of Article 9. In the event that the Court accepts Ms. McPherson's position that Suburban had no legal interest, this claim would not apply as Article 9's requirements facially apply only to "secured parties."

a. **Ms. McPherson's may recover for a wrongful repossession.**

Suburban claims that Ms. McPherson's only claim under Article 9 rests on the Suburban's lack of standing as a secured party. While true that Ms. McPherson has asserted the theory identified by Suburban, the argument ignores the allegations that the vehicle was taken without breach by Ms. McPherson and that no party had the right to take the vehicle (*Complaint*, R. 1 at ¶¶ 110-115; 179). For this reason, the Court should deny this motion as to the claims under Article 9.

**b.** <u>**Suburban is liable under Article 9 as secured party.**</u>

Suburban's principal defense to this claim is that Suburban was the lawful holder of a legitimate security interest at the time it repossessed the vehicle, and therefore Ms. McPherson has no claim.   Article 9 only allows the secured party to enforce its security interest through repossession, but only upon a default by the consumer.   Mich. Comp. Laws Serv. § 440.9601(1); M.C.L. § 440.9609(1).   As further clarified, the remedies exercised occur only "[a]fter default" by the debtor. M.C.L. § 440.9601 Comment 3.   M.C.L. § 440.9609 comment 2.   In the absence of a default, the secured party has no right to repossess the collateral secured by the finance agreement.   *Id*.

In this case, Suburban has not identified any contract provision under which it could declare a default and repossess the vehicle.   In point of fact, Ms. McPherson repeatedly attempted to make payment on the vehicle, payments which Suburban refused, claiming instead that it could not take payments because Ally Financial had rejected the loan.   To the contrary, Suburban was required to accept payments. M.C.L. § 492.132; *Bulletin 2013-08-CF*, Exhibit 17; *Michigan 2018 Dealer Manual*, Exhibit 18.

Additionally, Ms. McPherson has alleged that Suburban breached the peace when it sought to repossess her vehicle over her objection.   Complaint at ¶ 105.

19

Article 9 permits repossession ony if that repossession can occur with without breaching the peace.   M.C.L. § 440.9609(2); *Alexander v. Blackhawk Recovery & Investigation, L.L.C.*, 731 F. Supp. 2d 674, 680 (E.D. Mich. 2010) (Steeh, J); *Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 943 (N.D. Ohio 2015).   See also, *O'Connell v. Pursuit, LLC*, No. 3:17-cv-00067-GFVT, 2019 U.S. Dist. LEXIS 17951, at \*5 (E.D. Ky. Feb. 5, 2019); *Oney v. Assured Recovery LLC*, No. 19-C-680, 2019 U.S. Dist. LEXIS 124152, at \*9 (E.D. Wis. July 25, 2019).   Ms. McPherson's deposition testimony amply supports her claim of b reach of peace, as does that of Mr. Ferney, who had himself repossessed Ms. McPherson's vehicle.   A question of fact remains as to whether suburban violated Article 9.

The UCC permits creditors to repossess property only upon the debtor's default, and only if they can do so without breaching the peace.   Neither of those conditions exist here, and Suburban had no right to take Ms. McPherson's vehicle. The Court should deny Suburban's motion as to her claims under Article 9 and permit this matter to proceed to trial.

c.   **Ms. McPherson may recover actual and statutory damages under Article 9.**

Article 9 permits a consumer to pursue any *actual* damages incurred as a result of the secured creditor's violation. M.C.L. § 440.9625.   This provision makes clear

that any loss caused by the failure to comply is compensable, irrespective of form. Mich. Comp. Laws Serv. § 440.9625, comment 3.  These damages include those available under "tort" theories of recover that might be required in order to fully compensate a debtor who has suffered a violation, which in this case include the loss of Ms. McPherson's vehicle, emotional distress and alternative transportation. Simply put, Ms. McPherson is entitled to recover for any damages required to put her in as good a position as if the wrongful repossession had not occurred.   For this reason, Suburban's motion to dismiss Ms. McPherson's claims for actual damages should be denied.

As to Ms. Ms. Pherson's claims for statutory damages, that argument fairs no better.   Article 9 provides for statutory damages to consumers, even those who have no recoverable actual damages.  M.C.L. § 440.9625(3).  This section specifically allows "an amount not less than" the statutory award.   That minimum award has three components, 1) the credit services charge paid, plus 2) 10% of the principal paid, plus 3) 10% of the cash price.   Suburban's brief misstates this remedy by omitting the third component of this remedy and failing to disclose the $2,000 paid by Ms. McPherson as a down payment.   In this case, Ms. McPherson provided a down payment of $2,000.   If the Court finds a violation, Ms. McPherson would be entitled to a minimum recovery $2,613.90 under M.C.L. § 440.9625(3)(b).

**d.**   **Ms. McPherson may recover statutory damages for failing to provide the required notices concerning its repossession.**

In addition to damages associated with the wrongful repossession, the Article 9 also provides damages for the failure of the secured party to provide notice of their intention to dispose of the vehicle (M.C.L. § 440.9611) as well as a notice following that disposition explaining any surplus or deficiency (M.C.L. § 440.9616).   The failure to provide these notices gives rise to a claim for statutory damages.   M.C.L. § 440.9625(5)(f).   In the absence of any record evidence supporting the transmission of these notices, the Court should deny the motion as to the Article 9 claim and allow this matter to proceed to trial.

**8.**   **Neither Article 9 nor the Economic Loss Doctrine bar recovery for conversion.**

Suburban argues that *Tyson v. Sterling Rental, Inc.,* 836 F. 3d 571 (6th Cir. 2016) should not apply because the dealer there had assigned its interest away before it repossessed the car, and thus was not the secured party who Ms. Tyson could not have expected to repossess the vehicle.   From this observation, Suburban goes on to argue that unlike in *Tyson*, Suburban was the secured creditor at the time it took Ms. McPherson's vehicle, and thus she could have expected the repossession.

The critical issue in *Tyson* was whether Article 9 displaced tort, and the Sixth Circuit held that it did not, and independent tortious conduct remained actionable.

*Tyson* makes clear that the ELD has no application where a consumer could not expect the tortious conduct based on the negotiated arrangement.   In this case, Ms. McPherson has no reason to anticipate a dealer would repossess a delivered and titled vehicle based on the dealer's undisclosed intentions, and illegal handling of the financing.   (*Bulletin 2013-08-CF*, Exhibit 17; *Secretary of State 2013 Dealer Manual*, Exhibit 18; *Consumer Information*, 4-11-00, Exhibit 19) To the contrary, Michigan law expressly negates any such argument.   *Twichel*, supra; M.C.L. § 492.114b.   Suburban fails to explain how its conduct could possibly vitiate the binding nature of controlling Sixth Circuit authority. See *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 964 (E.D. Mich. 2017) (Lawson, J) ("Michigan law plainly states that the economic loss doctrine does not bar the plaintiff's tort claims, particularly its fraud claims, because the plaintiff could not have anticipated losses caused by the tortious conduct alleged in the second amended complaint.").

More substantively, and contrary to Suburban's contention, Article 9 not only preserves the right to seek tort damages, but affirmatively relies on the availability of conversion as a supplement to its own remedies. M.C.L. § 440.9626, Comment 2. ("In a proper case, the secured party also may be liable for conversion under non-UCC law."); M.C.L. § 440.9620 Comment 12.   ("Remedies available under other law, including conversion, remain available under this Article in appropriate cases."). See also, See M.C.L. § 440.9207 comment 5; See M.C.L. § 440.9208

Comment 4; M.C.L. § 440.9315 Comment 2, M.C.L. § 440.9609, Comment 5.

Even if this were not the case, and assuming the ELD did bar damages against a secured party, the critical fact upon which Suburban's argument rests is an allegedly distinguishing fact. But the purported fact upon which Suburban relies is entirely false. Suburban properly completed the sale to Ms. McPherson and used its power under the master agreement to perfect Ally's security interest, (SOUMF at ¶57; *Twichel*.) Suburban made this transfer a matter of public record, and later certified that it had made this transfer as a mistake. (*Certified Title History*, Exhibit 41). Ally Financial never reconveyed its security interest to Suburban. Thus, Suburban transferred its security interest to Ally Financial at the time of sale, and that security interest was never returned. Ally simply disclaimed it.

Suburban may wish the documents to say something else, but there is simply no evidence to support a claim that it held any legally cognizable security interest at the time that it repossessed the vehicle. For these reasons, the Court should deny Suburban's motion as to the claim for violation of the RJA.

## CONCLUSION

Ms. McPherson has established that genuine issues of material fact remain regarding each of her claims in this litigation making summary judgment Suburban's motion for summary judgment and allow his claims to proceed to trial.

Respectfully Submitted,


By:   /s/ *Ian B. Lyngklip*
Ian B. Lyngklip P47173
**LYNGKLIP & ASSOCIATES,**
**CONSUMER LAW CENTER, PLC**
Attorney for Tina McPherson
13751 W. 11 Mile Road
Oak Park, MI   48237
(248) 208-8864
Ian@ConsumerLawyers.Com

Dated: April 1, 2022

**<u>Certificate of Service</u>**

I hereby certify that on March 9, 2022, I electronically filed the foregoing paper with the Clerk of the Court and served this document on the following parties:

**Party**                                    **Manner Served**

Suzanne P. Bartos
Cummings, McClorey, Davis &
Acho, PLC
17436 College Parkway
Livonia, MI   48152

                                  Respectfully Submitted,


                                  By:   /s/ *Ian B. Lyngklip*
                                  Ian B. Lyngklip P47173
                                  **LYNGKLIP & ASSOCIATES,**
                                  **CONSUMER LAW CENTER, PLC**
                                  Attorney for Tina McPherson
                                  13751 W. 11 Mile Road
                                  Oak Park, MI   48237
                                  (248) 208-8864
                                  Ian@ConsumerLawyers.Com

Dated: March 9, 2022

26

27