UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA MCPHERSON,

        Plaintiff,                     Case Number 20-13152
v.                                              Honorable David M. Lawson

SUBURBAN ANN ARBOR, LLC,

        Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES

Plaintiff Tina McPherson sued defendant Suburban Ann Arbor, a motor vehicle dealer, alleging claims under the Fair Credit Reporting Act (FCRA), Equal Credit Opportunity Act (ECOA), Michigan Regulation of Collection Practices Act (MRCPA), Michigan Motor Vehicle Sales Finance Act (MMVSFA), and Michigan Credit Reform Act (MCRA), and for improper repossession under the Uniform Commercial Code (U.C.C.), and conversion of personal property. The jury returned a verdict for the plaintiff on all of her federal claims under the FCRA and ECOA, and on all her claims under Michigan law, which are the MRCPA, MMVSFA, and MCRA statutes, as well as on her claims for improper repossession under the U.C.C. and conversion of personal property. Several of these statutes contain fee-shifting provisions, and the plaintiff has filed a timely motion for attorney's fees and litigation expenses. The defendant concedes that the plaintiff is entitled to an attorney's fee award, but it contends that the amounts claimed are excessive. The Court heard oral argument on the motion on June 18, 2024. The record supports an award at an hourly rate that is lower than that requested by plaintiff's counsel, and some of the hours charged are not reasonable. However, the plaintiff is entitled to a reasonable amount for attorney's fees and expenses as moderated by the Court, as explained below. The motion will be granted in part.

I.

In her opening motion brief, the plaintiff asks the Court to award a total of $555,039.50 in attorney's fees based on an aggregate total of 1,269 hours of itemized hours logged by three attorneys and two paralegals, along with a total of $20,684.61 in non-taxable costs and expenses. In its opposition, the defendant challenged certain billing and expense entries on various grounds. In her reply, the plaintiff conceded most of the disputed line items, and with those concessions she submitted a revised request for $546,744.50 in attorney fees (a reduction of $8,295) and $11,212.61 in costs and expenses ($9,472 less than the initial request). *See* Plf.'s Reply, ECF No. 195-6, PageID.5265.

Defendant acknowledges that several of the consumer protection statutes provide for fee shifting and it concedes that the plaintiff is entitled to an award of reasonable attorney fees as the prevailing party. However, it argues that (1) rates of $600 per hour for plaintiff's counsel exceed the 95th percentile prevailing market rates and are not justified by experience or other factors, (2) some line items appear to constitute duplicative efforts by more than one attorney, or for other reasons appear to be unrelated to or unreasonably billed as work related to the litigation, and (3) the claim for more than $47,000 in work done by paralegals should be disallowed because "the vast majority of those time entries [are] for clerical/secretarial tasks."

In her reply brief, the plaintiff insists that the defendant has not shown that any of the following disputed items represent unreasonable billings: (1) $5,832 for appearance of a second attorney at depositions, (2) 78.1 hours devoted to the plaintiff's opposition to the defendant's motion for summary judgment, which involved analysis and argument of a record including 47 exhibits and 14 depositions, (3) 24.6 hours billed for preparation of the joint final pretrial order, (4) $12,960 in billable hours relating to claims against a co-defendant that was dismissed from the

case, (5) 316.2 hours billed by the Lyngklip firm's paralegals at a rate of $150 per hour, comprising $47,430 in billings that the defendant says cover merely "secretarial work," and (6) $4,740 associated with an (unfiled) motion to establish a receivership to preserve the defendant's assets. Those remaining items in dispute comprise a total of $66,693 in attorney billings and $47,430 in claims for paralegal work, totaling $114,123.

In a declaration, plaintiff's lead counsel summarized the itemized billing records and attested that they memorialize 687.9 billable hours accrued by plaintiff's lead counsel, Ian Lyngklip, 129.6 hours by his associate Sylvia Bolos, and 317.1 hours billed by two paralegals employed by Mr. Lyngklip's firm. Ian Lyngklip decl., ECF No. 189-3, PageID.4855. Plaintiff requested compensation for that time at hourly rates of $600 per hour for Mr. Lynkglip, $450 per hour for his associate Ms. Bolos, and $150 per hour for the paralegals. Lyngklip represented that he applied a 7.5% across the board reduction to the bottom line billings, to account for "billing discretion." Plaintiff's trial counsel, Duran Keller, attested in his own declaration that he seeks compensation for 134.4 hours of his time spent in preparation for and conduct of the jury trial at a rate of $600 per hour. Keller similarly conceded a 7.5% reduction of his total bill for "billing discretion." Duran Keller decl., ECF No. 189-11, PageID.4956.

II.

Typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonabl[e] hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of

hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, the Court must "exclude . . . hours that were not reasonably expended." *Id.* at 434. A reasonable rate for the purpose of the lodestar calculation is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information that the Court may consider include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 716 (internal quotation omitted).

When a prevailing party provides sufficiently reliable and "particularized" billing records, "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Imwalle v. Reliance Med. Prod.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). However, the invoices furnished must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553; *see also Hensley*, 461 U.S. at 433, 437 n.12.

The number of hours reasonably expended on a matter may include such things as time spent drafting pleadings, meeting with clients, and preparing the case for trial. *See Hensley*, 461 U.S. at 34 (indicating that the hours should be of the type billed to one's client). However, the court may reduce the number of hours claimed where the documentation is inadequate or the time was not "reasonably expended." *Mehney-Egan v. Mendoza*, 130 F. Supp. 2d 884, 886 (E.D. Mich.

2001). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. 'A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.'" *Ibid.* (quoting Mich. R. Pro. Conduct (MRPC) 1.5).

Once the lodestar is determined, the Court may consider the so-called *Johnson* factors to adjust a lodestar. Those factors include:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5, 93 (1989) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). However, there is a "strong presumption" that the lodestar represents the "reasonable" fee, and the party advocating a departure from the lodestar amount bears the burden of establishing that the adjustment is "necessary to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (holding that the lodestar figure has "become the guiding light of our fee-shifting jurisprudence") (citing *Blum v. Stenson*, 465 U.S. 886, 898 (1984)).

The defendant concedes as a threshold matter that several of the consumer statutes under which the plaintiff prevailed entitle her to an award of reasonable attorney fees. *E.g.*, 15 U.S.C. § 1681n(a)(3) (FCRA) (providing for recovery of "the costs of the action together with reasonable attorney's fees as determined by the court."); Mich. Comp. Laws § 445.257(2) (MRCPA) ("If the court finds that the method, act, or practice was a willful violation, . . . [it] shall award reasonable attorney's fees and court costs incurred in connection with the action.").

The plaintiff now seeks a total fee award of 546,744.50, based on 951.9 documented hours of attorney labor and 317.1 hours of work by two paralegals. Subtracting for the sake of analysis the $47,430 in billings for claimed paralegal hours (nominally logged at $150 per hour), that leaves a total of $499,314.50 in attorney billings. The plaintiff attributes the claimed attorney compensation to a total of 951.9 billable hours logged by her three attorneys of record. Dividing those overall figures, that works out to an imputed lodestar rate of $524 per hour for work by the several lawyers. However, the plaintiff insists upon an hourly rate of $600 per hour for the bulk of her lawyers' work on the case, most of which was performed by Mr. Lyngklip and (at trial) Mr. Keller.

The Michigan State Bar economic survey of lawyers publishes annually the results of its research of lawyer income and billing practices, separated into a variety of categories. For managing law firm partners, the prevailing median hourly billing rate is $308; the 75th percentile rate is $408; and the 95th percentile rate is $585 per hour. For associates, the corresponding surveyed rates are $230 / $335 / $500 per hour. Based on years in practice the surveyed prevailing median hourly billing rate is $305; the 75th percentile rate is $395; and the 95th percentile rate is $575 for attorneys with 11 to 15 years of experience, and $342 / $450 / $645 per hour for attorneys with 31 to 35 years. Based on practice area, the corresponding surveyed hourly rates are $330 / $450 / $600 per hour for attorneys engaged in consumer law. 2023 Economics of Law Survey Results, State Bar of Michigan, at 5-7 (2023) https://www.michbar.org/file/pmrc/pdfs/ 2_2023EOL_SurveyResults.pdf.

Mr. Lyngklip's and Mr. Keller's claimed rates of $600 per hour meet or exceed the 95th percentile figures in every relevant category except for lawyers with 31-35 years of experience, where the top 5th percentile command a rate of $645 per hour. The imputed lodestar rate computed

above also significantly exceeds the 75th percentile rates in every applicable category. Mr. Lyngklip says that the steep hourly rate is justified by his decades of experience and esteem in the legal community as a specialist in the practice of consumer law and in particular cases involving the types of abusive transactions at issue here. That position, however, is undercut by the fact that the plaintiff's lead counsel felt the need to retain another lawyer to handle most of the trial duties in the case. Mr. Keller conducted the majority of the trial presentation including delivering the opening and closing statements and examination of the defendant's principal witnesses and the plaintiff herself. This is not to suggest that the decision to retain able trial counsel was imprudent or improper in any way: the verdict speaks for itself and justifies the soundness of plaintiff's trial preparations and presentation. And Mr. Lyngklip is to be commended for acknowledging his own limitations. But that recognition ought to carry over to the fee request. The fact that as lead counsel Mr. Lyngklip elected to assign to another lawyer the majority of the trial presentation somewhat dilutes his argument that his ability and prestige is sufficiently legendary to justify an hourly rate exceeding the compensation garnered by 95 in 100 of his peers. As to Mr. Keller's claim to the same rate, his position significantly is undercut by the fact that he has many fewer years in practice than Mr. Lyngklip, having been licensed only since 2013.

The most generally applicable rate affording somewhat of a premium for the experience and credentials accrued by plaintiff's counsel is the 75th percentile figure of $450 per hour for Michigan lawyers engaged in the practice of consumer law. As the defendant points out, in other similar cases the trial judges in this district have deemed 75th percentile rates appropriate to compensate for Mr. Lyngklip's years of experience and standing in the legal community. As Judge Levy noted in *Krueger v. Experian Info. Sols., Inc.*, No. 19-10581, 2024 WL 497105 (E.D. Mich. Feb. 8, 2024), "[i]n FCRA cases . . . courts have awarded at a rate slightly higher than the 75th

percentile . . . for a senior partner, Ian Lyngklip, with a specialty in consumer law for approximately the last 15 years." *Id.* at *4 (cleaned up). In *Firneno v. Radner Law Group, PLLC*, No. 13-10135, 2017 WL 3675613, at *1 (E.D. Mich. Aug. 25, 2017), Judge Murphy awarded Mr. Lyngklip a reduced hourly rate of $400 per hour, corresponding with the then prevailing 75th percentile rate for consumer law practice. *See* 2017 Economics of Law Practice Survey, https://www.michbar.org/file/pmrc/articles/0000153.pdf. Similarly, in *Tyson v. Sterling Rental, Inc.*, No. 13-13490, 2019 WL 3554713 (E.D. Mich. Apr. 17, 2019), *R&R adopted*, 2019 WL 3024719 (E.D. Mich. July 11, 2019), the magistrate judge recommended and the district judge affirmed a 75th percentile hourly rate of $350 per hour for Mr. Lyngklip. *Id.* at *13. In other recent cases, the recommended rate of $450 per hour has been found reasonable to compensate for Mr. Lyngklip's skill and experience. *E.g.*, *Echols v. Express Auto, Inc.*, No. 20-1706, 2021 WL 2099238, at *6 (6th Cir. May 25, 2021) (affirming attorney fee award to Mr. Lyngklip at $450 hourly rate).

A similar analysis applies to the hourly rate for trial counsel Duran Keller. *See Stewardson v. Cass Cnty.*, No. 18-958, 2023 WL 718-481, at *1-2 (N.D. Ind. Nov. 1, 2023) (determining that $450 was an appropriate hourly rate for Mr. Keller in a civil rights case). The hourly rate of $450 is appropriate for his work in this case.

Associate attorney Sylvia Bolos was admitted to practice law in 2013. She worked on this case until she left Mr. Lyngklip's firm in 2021. The appropriate hourly rate for her work corresponds to the median hourly rate for associate attorneys who are consumer law practitioners of $300. *See Croft v. L.C. Maxwell & Assocs., Inc.*, No. 17-13421, 2019 WL 275933, at *3 (E.D. Mich. Jan. 22, 2019).

The defendant objects to several of the hours charged by the plaintiff's various lawyers, aside from the various line items which the plaintiff has conceded and deleted from her revised fee demand. On the latter point, the defendant acknowledges that certain overlapping hours when more than one attorney handled a task can be addressed by deducting a small percentage of the charges to account for the duplication. *See Franklin v. Beydoun*, No. 14-14801, 2018 WL 11474571, at *7 (E.D. Mich. Dec. 3, 2018) (citing *Sigley v. Kuhn*, No. 98-3977, 2000 WL 145187, at *8 (6th Cir. Jan. 31, 2000)). Plaintiff's counsel already engaged in that exercise by reducing the fee request by 7.5 percent.

Another point of contention is the time charged for responding to the defendant's motion for summary judgment: 78.1 hours, or nearly two weeks of full-time work. The defendant's summary judgment motion contained a number of spurious arguments casting upon the plaintiff the fault for the transaction gone bad, and all those arguments had to be addressed. Moreover, the pretrial record was extensive — 47 exhibits and 14 depositions — although many of the exhibits that presumably were reviewed were part of the case from the outset, many forming the basis for the complaint. However, Mr. Lyngklip and his firm have demonstrated an abundant familiarity with this area of the law. The amount of time spent responding to the defendant's 22-page motion is significantly overstated and warrants a 30% reduction.

The defendant also objects to the charges for preparation of the joint final pretrial order and for work relating to an effort to establish a receivership when the plaintiff learned that the defendant had divested itself of its assets. That work was reasonable under the circumstances.

The defendant also objects to the billings for paralegal work, but it has not undertaken any effort to demonstrate through any developed argument or with specific examples why all (or any) of the itemized paralegal hours necessarily must be regarded as mere "secretarial work" rather than

- 9 -

legitimate paralegal labor. Its conclusory assertion that all of the labor improperly was billed is insufficient to pose a substantial obstacle to the fee claim. *Cook v. Greenleaf Twp.*, 861 F. App'x 31, 36 (6th Cir. 2021) ("[The] supplemental [opposition] brief merely listed conclusory objections to every billing entry. . . . [The] conclusory argument that the [attorney fee] award 'must' have included work for unrelated issues does not suffice to meet [the] burden of proof given their complete failure to identify specific factual support for it."); *see also Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) ("Conclusory allegations that [a fee] award [is] excessive and that counsel employed poor billing judgment do not suffice to establish that there was error."); *Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 330 (6th Cir. 2008) ("Graceland Fruit provides little detail in its brief as to exactly which portions of the work in question it finds problematic. In contrast, KIC's counsel provided records and invoices detailing the work completed on behalf of KIC, thus satisfying the requirement to 'maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). It is undisputed that "[p]aralegal fees are compensable as attorney's fees under the FCRA." *Greene v. Equifax Info. Servs., LLC*, No. 19-11094, 2021 WL 5444768, at *2 (E.D. Mich. Mar. 15, 2021) (citing *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979)). None of the itemized paralegal work can be characterized fairly as "non-professional work" or "ministerial" tasks, *see Nat'l Lab. Rels. Bd. v. Bannum, Inc*, 102 F.4th 358, 366 (6th Cir. 2024), and the defendant has not suggested that a $150 hourly rate is unreasonable for such work, *see ibid.* (approving $160 per hour for paralegal billings).

Neither side has argued that any of the *Johnson* factors warrants an adjustment of the lodestar award. As this Court has observed in prior cases, "[t]he Court need not parse each factor,"

and "it is sufficient to observe that they tend to balance each other, and no adjustment to the lodestar is necessary." *Alter Domus, LLC v. Winget*, No. 08-13845, 2024 WL 1307812, at *4 (E.D. Mich. Mar. 27, 2024).

To summarize, the plaintiff is entitled to attorney's fees to compensate attorney Lyngklip for 687.9 hours of work, less 23.4 hours to account for the summary judgment work reduction, less his voluntary 7.5% discretionary reduction, totaling 614.7 hours at the rate of $450 per hour. She also may receive attorney's fees for Mr. Keller's work consisting of 134.4 hours less his voluntary 7.5% discretionary reduction totaling 124.3 hours at the rate of $450 per hour. Those charges amount to $332,550. She also may receive attorney's fees for Ms. Bolos's work consisting of 129.6 hours at $300, equaling $38,880. Finally, the plaintiff is entitled to fees for 317.1 hours of paralegal work at $150 per hour, totaling $47,565. The total amount of the attorney fee award is $418,995.

The plaintiff also seeks compensation of $11,212.61 in litigation costs and expenses, which the defendant does not contest and which the Court deems reasonable.

### III.

Under the fee-shifting provisions of the statutes on which the plaintiff prevailed at trial, including the Fair Credit Reporting Act and the Michigan Regulation of Collection Practices Act, the plaintiff is entitled to reasonable attorney's fees and litigation expenses. Based on the analysis above, she may recover $418,995 in attorney's fees and $11,212.61 in litigation costs and expenses.

Accordingly, it is **ORDERED** that the plaintiff's motion for attorney's fees and expenses (ECF No. 189) is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff shall recover from the defendant attorney's fees of $418,995 and litigation costs and expenses of $11,212.61, for a total of $430,207.61.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 31, 2024