UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA MCPHERSON,

        Plaintiff,                        Case Number 20-13152

v.                                              Honorable David M. Lawson

SUBURBAN ANN ARBOR, LLC,

        Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S SECOND MOTION FOR ATTORNEY'S FEES AND EXPENSES

Plaintiff Tina McPherson returns to this Cout seeking additional attorney's fees under the fee-shifting provisions of the Fair Credit Reporting Act (FCRA), Equal Credit Opportunity Act (ECOA), Michigan Regulation of Collection Practices Act (MRCPA), Michigan Motor Vehicle Sales Finance Act (MMVSFA), and Michigan Credit Reform Act (MCRA) after an unsuccessful trip to the court of appeals. The Court already awarded the plaintiff substantial attorney's fees and costs ($430,207.61) following a favorable jury verdict on claims brought on these and other statutes. The Sixth Circuit affirmed the Court's amended judgment in its entirety, rejecting all of the arguments raised by the parties in their appeals and cross-appeals challenging the Court's fee award and its ruling on the plaintiff's demand for treble damages. The plaintiff now presents a total supplemental fee demand of $78,142. However, as explained below, $40,785 of that total is excludable because it consists of excessive, duplicative, or unnecessary work which contributed nothing essential to the plaintiff's success. The Court will grant the motion in part and award the difference.

I.

The plaintiff sued the defendant car dealership based on an alleged bait-and-switch or so-called "yo-yo" automobile sale transaction where the plaintiff was sold a motor vehicle under a purchase contract disclosing certain finance terms, and the defendant later attempted to unwind the transaction and compel the plaintiff to accept different financing terms, eventually repossessing the car unlawfully when she did not accede to the defendant's demands. Her complaint pleaded claims under the FCRA, ECOA, MRCPA, MMVSFA, and MCRA, and for improper repossession under the Uniform Commercial Code (U.C.C.), and conversion of personal property. After a lengthy period of discovery and dispositive motion practice the case proceeded to trial.

On November 3, 2023, the jury returned a verdict for the plaintiff on all of her federal claims under the FCRA and ECOA, and on all her claims under Michigan law, which are the MRCPA, MMVSFA, and MCRA, as well as on her claims for improper repossession under the U.C.C. and conversion of personal property. The jury also answered a special interrogatory finding that the defendant's violation of the MRCPA was willful. The jury awarded the plaintiff $15,000 in actual damages, answered a special interrogatory fixing the value of the converted property at $23,000, and also awarded the plaintiff $350,000 in punitive damages.

Following the return of the verdict, the plaintiff filed motions asking the Court to award treble damages on the conversion claim and three times her actual damages for the violation of Michigan's Regulation of Collection Practices Act, and a motion for an award of prejudgment interest. She also sought leave to commence immediate enforcement of the judgment contrary to the usual 30-day stay of execution under Federal Rule of Civil Procedure 62(a). On February 28, 2024, the Court issued an opinion denying the requests to award multiple damages and awarding the plaintiff prejudgment interest according to an agreed calculation of the amount based on a

formula specified by the Court. The Court also denied the motion for relief from the 30-day stay of judgment enforcement under Rule 62(a). On February 28, 2024, judgment was entered in favor of the plaintiff in the amount of $394,433.75. On March 22, 2024, the defendant filed a motion for remittitur seeking a reduction in the amount of damages awarded. The plaintiff filed her first motion for attorney fees on April 9, 2024.

On July 31, 2024, the Court issued separate opinions denying the defendant's motion for remittitur and granting in part the plaintiff's motion for attorney fees. An amended judgment was entered thereafter awarding the plaintiff $418,995 in attorney fees and litigation costs in the amount of $11,212.61. The plaintiff appealed the judgment, raising claims that the Court erred by refusing to award her treble damages on her conversion claim and that the Court's award of attorney fees unfairly undercompensated plaintiff's counsel. Thereafter, the defendant cross-appealed, raising its own challenge to the attorney fee ruling and arguing that plaintiff's counsel had been overcompensated because the Court rejected the defendant's demand to prune fees attributed to "clerical work" entirely from the fee computation.

On April 21, 2025, the Sixth Circuit affirmed the amended judgment, rejecting all of the arguments raised on appeal. *McPherson v. Suburban Ann Arbor, LLC*, 135 F.4th 419, 423 (6th Cir. 2025). In a concise opinion, the court of appeals concluded that the hourly rates adopted by the Court and the total fee award were reasonable, the Court sufficiently accounted for any doubts about the propriety of "paralegal" billings by imposing a significant discount on the overall fee award, and the Court did not err by rejecting the demand for treble damages.

The plaintiff now seeks additional attorney's fees for work performed after her first attorney's fee motion was filed and on appeal. She does not present much in the way of developed argument, positing in perfunctory fashion that she remains a "prevailing party" entitled to attorney

fees under the applicable statutes, and highlighting certain nominal "reductions" to her fee request where she says that she discounted a minor portion of attorney hours related to her unsuccessful appeal. She insists, however, that work done to litigate the prior fee motion and to "defend" the fee award against the defendant's cross-appeal should be compensable. The motion does not address the factors that may be applied to reduce a lodestar determination, and the plaintiff did not tender any reply brief addressing the points raised in the defendant's opposition brief. The plaintiff's motion seeks total additional compensation for $65,632 in billings by attorney Ian Lyngklip and his paralegal Ms. Moore and $12,510 attributed to attorney Duran Keller, for a grand total of $78,142.

The defendant asserts that it did not intend initially to appeal the judgment but was compelled to file its cross-appeal on September 5, 2024, after the plaintiff filed her notice of appeal on August 26, 2024 challenging the Court's fee ruling. It also contends that the request for fees accrued prior to issuance of the amended judgment is untimely because plaintiff could have sought to amend her fee petition prior to issuance of the ruling, but she made no effort to do so; the hourly rates previously determined by the Court are reasonable and should be adopted with respect to the present motion, if the Court awards any additional compensation; some time claimed represents double billing; some of the time billed by the plaintiff's "paralegal" Ms. Moore covers rote clerical tasks such as sending and receiving correspondence or filing documents and is not properly compensable at either attorney or paralegal rates; the plaintiff should not recover any of the fees relating to the unsuccessful appeal; work relating to post-judgment motion practice and negotiations over a bond release order and procedure for payment of the judgment was not reasonably done "on the litigation" because the plaintiff already had prevailed and the time spent was devoted solely to wrangling the logistics of defendant's payment of the amended judgment,

all of which resulted in the first instance from plaintiff's determination to pursue an appeal that ended with no change in the status quo *ante*; some of the billings represent time that had no substantive bearing on the litigation because they were attributed to correspondence with the Court about scheduling a post-judgment hearing; some of the time claimed improperly seeks to shift to defendant fees attributed to Mr. Lyngklip's efforts to disburse money to his client, which were incurred *after* the defendant tendered full satisfaction of the judgment to plaintiff's counsel; still other time appears to have been mistakenly logged by Mr. Lyngklip under the wrong case file, since the descriptions make reference to a motion for "summary disposition" and an "amended complaint," neither of which were filed during the post-trial proceedings in this case; and some paralegal time that relates to the alleged improperly billed attorney time should be excluded.

The defendant posits that, after accounting for all of the above deductions, the plaintiff's request for a total of $78,142 in attorney and paralegal fees should be reduced by 57% to a total of $33,701.

II.

The parties are well aware that, typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *NE. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonabl[e] hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, the Court must "exclude . . . hours that were not reasonably expended." *Id.* at 434. A reasonable rate for the purpose of the lodestar calculation is

"the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 716 (internal quotation omitted).

When a prevailing party provides sufficiently reliable and "particularized" billing records, "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Imwalle v. Reliance Med. Prod.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). However, the invoices furnished must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553; *see also Hensley*, 461 U.S. at 433, 437 n.12.

The number of hours reasonably expended on a matter may include such things as time spent drafting pleadings, meeting with clients, and preparing the case for trial. *See Hensley*, 461 U.S. at 34 (noting that the hours should be of the type billed to one's client). However, the court may reduce the number of hours claimed where the documentation is inadequate or the time was not "reasonably expended." *Mehney-Egan v. Mendoza*, 130 F. Supp. 2d 884, 886 (E.D. Mich. 2001). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. 'A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary

- 6 -

prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.'" *Ibid.* (quoting Mich. R. Pro. Conduct (MRPC) 1.5).

Once the lodestar is determined, the Court may consider the so-called *Johnson* factors to adjust a lodestar. Those factors include:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5, 93 (1989) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). However, there is a "strong presumption" that the lodestar represents the "reasonable" fee, and the party advocating a departure from the lodestar amount bears the burden of establishing that the adjustment is "necessary to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (holding that the lodestar figure has "become the guiding light of our fee-shifting jurisprudence") (citing *Blum v. Stenson*, 465 U.S. 886, 898 (1984)).

The total fee demand of $78,142 represents billings for approximately 174 hours of attorney labor at the previously adopted $450 hourly rate, which the court of appeals affirmed as reasonable. The plaintiff proposes the same reasonable hourly rate previously applied, and neither side has suggested a departure from that rate for the present motion. However, as discussed below, some discounts against the total of compensable hours are warranted.

*Overstaffing.* The Court will exclude all of the time billed by attorney Keller because the plaintiff has made no effort to justify the need for cumulative billings by her "trial specialist" during the appeal, which did not involve any claims of deficiency in the trial proceedings. To the

- 7 -

contrary, the issues raised on appeal focused entirely on post-trial judicial determinations of fact and law rendered after the trial had concluded. There is no reason apparent from the record or the plaintiff's presentation why Mr. Keller's involvement was essential to the appeal.

It is well established that the Court should exclude from the lodestar "hours that were not 'reasonably expended,'" which may include duplicative work by multiple attorneys on "cases [that are] overstaffed," as well as "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. The Court previously found that the decision to retain Mr. Keller as a trial specialist was reasonable in light of the difficulty of the trial presentation and (in hindsight) considering the excellent results obtained at trial. However, the plaintiff has made no effort to justify the excess staffing of the case at the appellate phase, and all of the compensation claimed by Mr. Keller (27.8 hours, $12,510) will be disallowed as excessive and unnecessary to the appellate phase of the litigation. Additionally, the defendant's accounting identifies 6.0 hours of time ($2,700) logged by Mr. Lyngklip and attributed to correspondence and discussions with Mr. Keller. Thus, a total of 33.8 hours ($15,210) for the duplicative and excessive billings will be deducted from the fee award.

*Unsuccessful Appeal.* The plaintiff concedes the propriety of minimal reductions of the time spent on her unsuccessful appeal, but the labor attributed to that unproductive post-judgment litigation will be reduced to a more significant degree encompassing all, or nearly all, of the claimed compensation.

As a general rule, attorney hours spent on unsuccessful claims should be excluded from the lodestar, if they can be segregated readily from hours invested in advancing successful claims, particularly where a plaintiff achieved only "limited success" in the litigation overall. *Hensle*, 461 U.S. at 424 ("Where the plaintiff failed to prevail on a claim unrelated to the successful claims,

the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.  But where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained.").  Here, the plaintiff achieved *total* success at trial, and her lawyers were generously compensated for their labor through the prior fee award.  However, the efforts of counsel on appeal achieved *nothing* in the way of further success for either the plaintiff or her counsel (on his attorney's fees appellate issues).

It is well accepted that after computing a lodestar derived from hours relating to legitimately billed work, the Court may impose a discount against the fee award based on the "degree of success" obtained by counsel.  "After conducting the lodestar calculation, the district court can adjust the award based on litigation-specific considerations."  *Freed v. Thomas*, 137 F.4th 552, 562 (6th Cir. 2025) (citing *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013)); *NE Ohio Coalition for Homeless*, 695 F.3d at 576 ("[T]he lodestar amount may be reduced because attorney's fees are not typically awarded for unsuccessful claims . . . . [T]he [district] court reduced the hours claimed by the plaintiffs and also applied a twenty percent reduction to the lodestar amount in recognition of its finding that the plaintiffs achieved less-than-total success on all of their claims.") (affirming reduced fee award).  At this stage the Court may consider and weigh the various *Johnson* factors, but "[t]he most important factor . . . is the extent to which the party seeking fees prevailed."  *Ibid.*  Federal courts routinely impose discounts at this stage of the analysis to exclude labor attributable to a failed appeal.  *E.g.*, *Murphy v. Smith*, 864 F.3d 583, 587 (7th Cir. 2017) ("Because the district court has already compensated all of Murphy's counsel's

successful work . . . we do not think it appropriate to award fees for his unsuccessful appellate work on his federal claim.").

True, the plaintiff prevailed in a limited sense in the court of appeals by defeating the defendant's argument that the Court erred by not further discounting the fee award to account for improperly billed "clerical" work. However, the defendant plausibly represents that it would not have taken any appeal from the judgment on its own initiative had the plaintiff not initiated her appeal seeking to further multiply her damages and inflate the attorney's fee award. That representation has not been rebutted by the plaintiff, and it is consistent with the record showing that the defendant did not file its notice of appeal until after the plaintiff's notice of appeal was filed, along with the fact that the defendant undertook to satisfy the amended judgment immediately after it was rendered. Had the plaintiff not initiated the futile appeal, there is no credible suggestion that any additional labor would have been required to "defend" the judgment on appeal.

The defendant's accounting identified 27.3 hours ($12,285) of Mr. Lyngklip's billings attributable to the unsuccessful appeal. *See* ECF No. 223-5, PageID.5671; ECF No. 223-8, PageID.5690-91. The plaintiff has not challenged the defendant's arithmetic or argued that any of the line items identified were separable from the appeal. Those billings that were associated with the unsuccessful appeal will be excluded from the fee award.

*Clerical Tasks.* As this Court previously observed, it is recognized that "[p]aralegal fees are compensable as attorney's fees under the FCRA." *Greene v. Equifax Info. Servs., LLC*, No. 19-11094, 2021 WL 5444768, at *2 (E.D. Mich. Mar. 15, 2021) (citing *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979)). The defendant does not suggest that $150 per hour is unreasonable for work performed by a paralegal, as long as it is not merely

"clerical" in nature, requiring "no legal knowledge." *See ibid.* (approving $160 per hour paralegal rate).

Nevertheless, in the recent appeal the Sixth Circuit acknowledged the countervailing principle that "'purely clerical or secretarial tasks . . . should not be billed at a paralegal rate.'" *McPherson*, 135 F.4th at 426 (quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989)). Whether work is "clerical" in nature is a factual determination to be made by this Court in the first instance, "whose unobstructed view of the litigation gives it a better sense of the work completed and the rate it commands." *Id.* at 426-27 (citing *Echols v. Express Auto, Inc.*, 857 F. App'x 224, 229 (6th Cir. 2021)).

The court of appeals did not examine whether any of the "paralegal" billings previously submitted by plaintiff's counsel should have been logged at a lower rate, because it concluded that "[e]ven if some purely clerical tasks appear on McPherson's ledger, the fee award adequately accounted for them [because] [the Court's cumulative] reductions, totaling almost $180,000, produced an award that reflected the [district] court's 'overall sense' of the attorneys' compensable effort," and the Court was not required to "comb line-by-line through McPherson's nearly 700-page bill" in order to reach a precise accounting of which line items were billed at improper rates. *Id.* at 427.

Here, the defendant identified 6.0 hours of time ($900) billed by the plaintiff's paralegal Ms. Moore, *see* ECF No. 223-4, which were devoted to mundane tasks such as sending and receiving correspondence or filing case related documents. The plaintiff has not challenged that accounting, and in accordance with the Sixth Circuit's guidance the labor attributed to such menial tasks will be excluded from the fee award.

*Post-Judgment Motion Practice.*  The defendant identified 19.7 hours ($8,865) of Mr. Lyngklip's billings related to post-judgment motion practice and negotiations over a bond release order and procedure for payment of the judgment, *see* ECF No. 223-6; ECF No. 223-8, PageID.5680-82, 5687-88, along with 4.4 hours of fees ($1,980) attributed to Mr. Lyngklip's efforts to pay out money to his client (e.g., drafting a "trust agreement"), which were incurred after the defendant tendered full satisfaction of the judgment to plaintiff's counsel, *see* ECF No. 223-8, PageID.5684-86.  The undertaking to settle the logistics of defendant's judgment satisfaction and complications caused by objections from the defendant's bonding agent all were precipitated in the first instance by the plaintiff's insistence on pursuing the unsuccessful appeal, which, as discussed above, was not work that resulted in any additional success for the plaintiff or her counsel.  For all of the same reasons discussed above, the Court will deduct charges for the unnecessary post-judgment motion practice and other tasks that were incurred only as a consequence of the futile appeal.

*Other Items.*  The defendant also identified (a) 2.2 hours ($990) which appear to have been mistakenly logged by Mr. Lyngklip under the wrong case file, since the descriptions make reference to a motion for "summary disposition" and an "amended complaint," neither of which were filed during the post-trial proceedings in this case, *see* ECF No. 223-8, PageID.5691; and (b) 3.7 hours ($555) logged by plaintiff's paralegal Ms. Moore that the defendant says also should be excluded due to their association with various categories of improperly billed attorney hours discussed above, *see* ECF No. 223-8, PageID.5693-95.  The plaintiff offers no rebuttal to those line item challenges, and those amounts also will be removed from the fee award.

III.

The plaintiff tendered a total supplemental fee demand of $78,142. For the reasons stated above, $40,785 of that total is excludable because it consists of excessive, duplicative, or unnecessary work that contributed nothing material to the plaintiff's success. The defendant identified a handful of other discrepancies in the plaintiff's fee accounting which are *de minimis*. With the discounts imposed, the resulting total award will be $37,357 for all of the labor undertaken to conclude the proceedings for which the plaintiff's counsel were not compensated by the previous fee award in the amended judgment. Based on the $450 hourly rate previously adopted by the Court and affirmed by the court of appeals, the resulting award compensates for an imputed total of 83 hours of attorney labor, which represents a reasonable amount of additional compensation for the efforts by plaintiff's counsel to conclude the proceedings.

Accordingly, it is **ORDERED** that the plaintiff's second motion for attorney's fees and expenses (ECF No. 221) is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff shall recover from the defendant additional attorney's fees of $37,357.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:   October 29, 2025